1   Christopher W. Wood (SBN 193955)
2   **DREYER BABICH BUCCOLA**
    **WOOD CAMPORA, LLP**
3   20 Bicentennial Circle
4   Sacramento, California 95826
    Telephone: (916) 379-3500
5   Facsimile: (916) 379-3599
6   *cwood@dbbwc.com*

7   John P. Kristensen (SBN 224132)
    Jesenia A. Martinez (SBN 316969)
8   **KRISTENSEN LLP**
9   12450 Beatrice Street, Suite 200
    Los Angeles, California 90066
10  Telephone: (310) 507-7924
11  Facsimile: (310) 507-7906
    *john@kristensenlaw.com*
12  *jesenia@kristensenlaw.com*
13
    *Attorneys for Plaintiff and all others*
14  *similarly situated*

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Thomas E. Wheeler (SBN 308789)
**LAW OFFICES OF TODD M.**
**FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, California 91367
Telephone: (877) 619-8966
Facsimile: (866) 633-0028
*tfriedman@toddflaw.com*
*abacon@toddflaw.com*
*twheeler@toddflaw.com*

15
16  ## THE UNITED STATES DISTRICT COURT
    ## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION
17

18  SHAWN SPENCER, individually on
    behalf of himself and all others
19  similarly situated,

20        Plaintiffs,

21  v.

22  HONDA MOTOR CORP. LTD., a
    Japanese corporation; AMERICAN
23  HONDA MOTOR CO., INC., a
    California corporation; and DOES 1
24  through 10, inclusive,
25
26        Defendants.

Case No:

**CLASS ACTION**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**

**(1) Violation of the California Consumer Legal Remedies Act;**
**(2) Violation of the California Unfair Competition Law; and**
(3) **Violation of California False Advertising Law.**

**DEMAND FOR JURY TRIAL**

**DECLARATION OF SHAWN SPENCER**

27
28

# TABLE OF CONTENTS

PLAINTIFF'S COMPLAINT ................................................................... 1

I.    NATURE OF THE ACTION ............................................................ 1

II.   UTVs SOLD BY HONDA ............................................................. 3

III.  JURISDICTION AND VENUE ......................................................... 5

IV.   PARTIES ................................................................................ 5

V.    FACTUAL ALLEGATIONS ............................................................ 7

      A. *The Government Considers Regulations for UTVs* ............................. 7

      B. *The 1970s OSHA Regulation for ROPS on Farm Tractors* ................. 8

      C. *ROHVA, a Honda-Controlled Entity, Adopts the 29 C.F.R. §*
         *1928.53 Test* ................................................................... 9

      D. *Honda Cheats and None of the Class Vehicles Passes the 29*
         *C.F.R. § 1928.53 Test* ....................................................... 10

      E. *Plaintiff's Transactions* ..................................................... 11

VI.   CLASS ALLEGATIONS .............................................................. 13

VII.  CAUSES OF ACTION ............................................................... 18

      FIRST CAUSE OF ACTION
      Violation of the California Consumer Legal Remedies Act
      By Plaintiff and the Class Against All Defendants ................................ 18

      SECOND CAUSE OF ACTION
      Violation of the California Unfair Competition Law
      By Plaintiffs and the Class Against All Defendants .............................. 22

      THIRD CAUSE OF ACTION
      Violation of the California False Advertising Law
      By Plaintiff and the Class Against All Defendants ................................ 26

PRAYER FOR RELIEF .................................................................... 28

DEMAND FOR JURY TRIAL ............................................................ 30

1    Plaintiff SHAWN SPENCER ("Plaintiff"), individually and on behalf of all

2   others similarly situated, alleges the following upon information and belief, based

3   upon investigation of counsel, published reports, and personal knowledge:

4   **I.    NATURE OF THE ACTION**

5        1.    Plaintiff brings this action against defendants HONDA MOTOR

6   CORP., LTD. and AMERICAN HONDA MOTOR CO., INC. (collectively,

7   "Defendants" or "Honda") on behalf of all persons who purchased in California in

8   the four years preceding this Complaint Honda Utility Terrain Vehicles ("UTVs")

9   (they are also called side by sides) that Honda

10  claimed/advertised/marked/certified that the vehicles' rollover protection system

11  ("ROPS") complied with the department of Occupational Safety and Health

12  Administration ("OSHA") requirements/standards of 29 C.F.R. § 1928.53 (which

13  is for agricultural tractors).

14       2.    "Class Vehicles" is defined to include, but is not limited to the

15  following models: TALON 1000X; TALON 1000X Fox Live Valve; TALON

16  1000R; TALON 1000R Fox Live Valve; TALON 1000R Special Edition;

17  TALON 1000X-4; TALON 1000X-4 Fox Live Valve; TALON 1000X-4 Special

18  Edition; PIONEER 500; PIONEER 520; PIONEER 700; PIONEER 700 Deluxe;

19  PIONEER 700-4; PIONEER 700-4 Deluxe; PIONEER 1000; PIONEER 1000

20  Deluxe; PIONEER 1000 Special Edition; PIONEER 1000 Limited Edition;

21  PIONEER 1000 EPS; PIONEER 1000-5; PIONEER 1000-5 Deluxe; PIONEER

22  1000-5 Special Edition; PIONEER 1000-5 Limited Edition.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

3.      Honda includes informative labels required to be presented to customers by the Recreational Off-Highway Vehicle Association ("ROHVA") like the following to suggest that their vehicles meet these OSHA requirements:

The ROPS meets the requirements of 29 CFR Part 1928.53 (OSHA)

Model: Honda SXS1000S2X/S2R

Test GVWR: 2350 lbs (1066 kg)

Honda of South Carolina Manufacturing, Inc.
1111 Honda Way, Timmonsville, SC

4.      The stickers are placed on Class Vehicles and are visible at the point of sale where consumers are also informed that Class Vehicles meet all applicable standards and regulations, including self-adopted regulations, and meet OSHA requirements of 29 C.F.R. § 1928.53, when in fact, they do not. Honda of South Carolina Manufacturing, Inc. was fully absorbed into defendant AMERICAN HONDA MOTOR CO., INC. in a merger filed with the South Carolina Secretary of State on March 4, 2021.

5.      None of the Class Vehicles sold by Honda meet the OSHA requirements of 29 C.F.R. § 1928.53. Honda tells all of their customers that their ROPS are safe because they meet this standard. They do not. Honda has also staved off federal regulations by the U.S. Consumer Product Safety Commission ("CPSC") in part by causing the adoption of newly created industry standards as part of the self-regulation revolution. Even after adopting farm tractor standards issued for worker safety on farms in the early 1970s, Honda cheats and does not even meet those standards.

6.      Roof strength is a vital safety concern to consumers given the strong likelihood of UTVs rolling over. The failure to meet all applicable federal and state statutes, standards, regulations, and self-adopted regulations, including OSHA 29 C.F.R. § 1928.53 requirements is material information for consumers purchasing/leasing UTVs, such as the Class Vehicles.

///

7.     While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

8.     Unless otherwise stated, Plaintiff alleges that any violations by Honda were knowing and intentional, and that Honda did not maintain procedures reasonably adapted to avoid any such violation.

9.     Unless otherwise indicated, the use of any defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that defendant's name.

## II.    <u>UTVS SOLD BY HONDA</u>

10.     A UTV is a motorized vehicle with four or more low pressure tires designed for off-road use and intended by the manufacturer primarily for recreational use by one or more persons. UTVs are relatively new products in the motorized off-road category, and their speed and design make them unique from all-terrain vehicles ("ATVs"). The main distinction is that an ATV is defined by federal law, in part as: any motorized, off-highway vehicle designed to travel on 3 or 4 wheels, having a seat designed to be straddled by the operator and handlebars for steering control. *See* 15 U.S.C. § 2089(e)(1)(A).

11.     A UTV, unlike an ATV, has traditional seating like an automobile with bench or bucket seats, a restraint system and is equipped with a steering wheel. UTVs are similar in design to golf carts with throttle and brake pedals. While golf carts travel approximately 15 miles per hour or less, UTVs such as the Honda Pioneers and Talons have top speeds between well in excess of 60 miles per hour. Honda UTVs are powered by strong engines in excess of 100 horsepower.

12.     The images depicted below are from Honda' most recent earnings report and website. They show the Pioneers and Talons, which do not look like slow 1970s farm tractors:

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24
25
26
27



28   ///

13.   UTVs were introduced into the United States market in the late 1990s. In 1998, only 2,000 UTV s were sold, all by one manufacturer. Honda entered the market in 2000. By 2003, 20,000 UTVs were sold in the United States. That number then grew dramatically. There was a 19% growth from calendar year 2006 over 2005 levels with approximately 255,000 UTVs sold worldwide.

14.   Honda UTVs are sold at retail with an approximate median base price of around $12,999.99 and sell at prices exceeding $20,000.00. The price is similar to entry and midsize automobiles.

III.   **JURISDICTION AND VENUE**

15.   Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, a resident of Plumas County, California, seeks relief on behalf of a California class. In addition, the matter in controversy exceeds $5,000,000 exclusive of interest and costs. Plaintiff purchased his Honda UTV in Butte County, California. Therefore, the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

16.   Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein occurred within this judicial district; and (ii) Defendants conducted business within this judicial district at all times relevant.

17.   Because Defendants conducted business within the State of California at all time relevant, personal jurisdiction is established.

IV.   **PARTIES**

18.   Plaintiff is an individual who resides in the County of Plumas, California. Plaintiff is a member of the putative class defined herein.

19.   Plaintiff is informed and believes, and upon such information and belief alleges thereon, that defendant HONDA MOTOR CORP., LTD. ("Honda Motor") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan. Honda Motor manufactures and sells motorcycles, automobiles,

1   and power products through independent retail dealers, outlets, and authorized

2   dealerships primarily in Japan, North America, Europe, and Asia. Honda Motor

3   has at least the following facilities in California: U.S. Corporate Headquarters,

4   U.S. Sales and Marketing, Automobile Customer Service, the Advanced Styling

5   Center, three Parts Centers, and the Research and Development Test Track. Honda

6   Motor may be served via its subsidiary defendant American Honda Motor Co.,

7   Inc. *See Yamaha v. Superior Court*, 174 Cal.App.4th 264 (2009); *Khachatryan v.*

8   *Toyota Motor Sales, Inc.*, 578 F.Supp.2d 1224, 1226 (C.D. Cal. 2006); *see also*

9   *Troll Busters LLC v. Roche Diagnostics GMBH*, No. 11cv56-IEG (WMc), 2011

10  WL 3859721(S.D. Cal. Aug. 31, 2011).

11          20.     Plaintiff is informed and believes, and upon such information and

12  belief alleges thereon, that defendant AMERICAN HONDA MOTOR CO., INC.

13  ("American Honda") is a subsidiary of Honda Motor headquartered in Torrance,

14  California. American Honda conducts the sale, marketing, and operational

15  activities for Honda cars, trucks, and sport utility vehicles automobile parts in the

16  United States. American Honda manufactures and assembles its vehicles for sale

17  in the United States in automobile plants located in Greensburg, Indiana, East

18  Liberty, Ohio, Lincoln, Alabama, Marysville, Ohio and South Carolina. American

19  Honda's agent for service of process is CT Corporation, 818 West Seventh Street,

20  Suite 930, Los Angeles, California.

21          21.     HONDA OF SOUTH CAROLINA MANUFACTURING, INC.

22  ("HSC") was a wholly-owned subsidiary of Honda Motor and American Honda

23  with its principal place of business in Timmonsville, South Carolina. HSC's agent

24  for service of process was InCorp Services, Inc. at 317 Ruth Vista Road,

25  Lexington, South Carolina, 29073. This is moot, because HSC was fully absorbed

26  into American Honda in a Merger filed with the South Carolina Secretary of State

27  on March 4, 2021.

28  ///

22.     The above-named Defendants, and their subsidiaries and agents, are collectively referred to as "Defendants" and "Honda." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

23.     Plaintiff is informed and believes, and thereon alleges, that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and was the owner, agent, servant, joint venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes, and thereon alleges, that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

24.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for each other's acts and omissions.

## V.     FACTUAL ALLEGATIONS

### A.     *The Government Considers Regulations for UTVs*

25.     Honda UTVs are subject to product safety standards administered by the CPSC, not the National Highway Traffic Safety Administration ("NHTSA"). UTVs are "consumer products" that can be regulated by the CPSC via the Consumer Product Safety Act. *See* 15 U.S.C. § 2052(a).

26.     On December 12, 2008, the CPSC met with representatives of ROVHA to discuss the development of a standard to be certified by the American National Standards Institute ("ANSI"). The standards discussed, at this time,

involved stability standards. ROHVA then sent over in June 2009, proposed voluntary standards, including one for the ROPS. American Honda communicated with the CPSC on behalf of the Honda entities.

27.    In 2009, the CPSC began the process of considering regulatory action of UTVs. (In CPSC nomenclature they are ROVs.) It issued a Notice of Proposed Rulemaking. The CPSC noted that farm vehicles have maximum speeds of 25 mph or less, while UTVs at the time could exceed 30 mph. The CPSC identified its databases of Injury and Potential Injury Incidents (IPII) and In-Depth Investigation (INDP) for incidents between January 2003 and August 2009 involving 181 incidents, including 116 fatalities and 152 other injuries. The injuries included deglovings, fractures and crushing injuries to victims' legs, feet, arms and hands, resulting in amputations at times. 69% of the injuries occurred in rollover incidents.

28.    By April 2013, the CPSC was aware of 428 incidents resulting in 231 fatalities and 388 other injuries. 150 of the 231 deaths were in rollover accidents.

**B.**    *The 1970s OSHA Regulation for ROPS on Farm Tractors*

29.    In 1972, the U.S. Department of Labor concerned that "[t]ractor roll-overs have been a major cause of employee injury and death on the farm" appointed the Standards Advisory Committee on Agriculture to make a ROPS standard a priority.

30.    After the notice of proposed rulemaking notice period, the Department of Labor, via OSHA promulgated 29 C.F.R. §§ 1928.51 (definitions), 1928.52 and 1928.53 (ROPS strength test).

31.    The test for the ROPS strength involves forces applied to the ROPS system and it measures the deflection caused by the force. If there is too much deflection the ROPS fails the tests. How much force is applied, according to the regulation depends on the tractor weight.

///

32.     Tractor weight is defined pursuant to 29 C.F.R. §§ 1928.51(a)(4) as:

> "Tractor weight" includes the protective frame or enclosure, all fuels, and other components required for normal use of the tractor. Ballast shall be added as necessary to achieve **a minimum total weight** of 110 lb. (50.0 kg.) per maximum power take-off horse power at the rated engine speed or the maximum, gross vehicle weight specified by the manufacturer, **whichever is the greatest**. From end weight shall be at least 25 percent of the tractor test weight. **In case power take-off horsepower is not available, 95 percent of net engine flywheel horsepower shall be used**.

33.     Thus, the weight to be tested is either the gross vehicle weight (about 2,000 to 2,400 pounds, or the 110 pounds multiplied by the maximum power take off horse power. The statute specifically indicates if the tractor is not one where you can measure the "power take off" horsepower, or PTO, then 95 percent of net engine flywheel horsepower is used.

**C.**     *ROHVA, a Honda-Controlled Entity, Adopts the 29 C.F.R. § 1928.53 Test, Instead of FMVSS 216*

34.     In order to avoid CPSC promulgating actual regulations, Honda and the industry set up new standards with which they would comport. One of these was for the strength of the ROPS. This was done via ROHVA, which is controlled, in part by Honda. ROHVA adopted the tractor ROPS test of 29 C.F.R. §§ 1928.51, *et seq.*, This was then made into an ANSI standard.

35.     In 2009, the standard for roof strength for automobiles and trucks with gross vehicle weight under 10,000 pounds was amended. FMVSS 216 is the roof strength standard promulgated by NHTSA. The standards are minimum standards that all vehicles must meet. Nevertheless, after 20-30 years of gross roots efforts and real-world deaths from roof crushes in passenger vehicles, the test was strengthened by NHTSA so that three times (3x) the gross vehicle weight is applied to the A pillar of a vehicle. The frame is only permitted so much

1  deflection. The limit was doubled from 1.5 times gross vehicle weight to three

2  times.

3       **D.**    *Honda Cheats and None of the Class Vehicles Passes the 29 C.F.R. §*

4             *1928.53 Test*

5       36.    The Class Vehicles consisting of 2017 to 2021 Honda UTVs are

6  believed to have horsepower ranging from approximately 150 horsepower to 68

7  horsepower for the smaller 2-door Pioneers.

8       37.    For every model of Class Vehicles, Honda tested the vehicles by the

9  gross vehicle weight. Honda intentionally refused to test at 110 pounds times

10  either the maximum power take off horsepower or 95% of the net engine flywheel

11  horsepower if the power take off horsepower is unavailable. For example, the if a

12  Talon is tested at 2750 pounds (the gross vehicle weight is 2713 pounds) and it

13  has 150 horsepower. 95% of 150 horsepower is 142.5. So, 110 pounds multiplied

14  by 142.5 is 15,675. The correct "W" or tractor weight in the test, should be 15,675

15  pounds. Honda intentionally refused to use the correct tractor weight of

16  approximately 15,675pounds. Instead, it used 2,750 pounds. Honda did not

17  comply with the test. Honda misled all Class Members.

18       38.    The Honda vehicles are lighter and have much stronger engines than

19  farm tractors. Hence, their gross vehicle weights are comparatively lower, and 110

20  pounds times their PTO horsepower (or 95% of the net fly wheel horsepower) is

21  going to be larger than that of the farm tractors.

22       39.    In fact, the gross vehicle weight, due the specifications of the Class

23  Vehicles should never be used for the OSHA tests. 110 pounds times the PTO

24  horsepower (or 95% of the net fly wheel horsepower) of each Class Vehicle is

25  substantially greater than the gross vehicle weights.

26  ///

27  ///

28  ///

1    40.    Not a single Class Vehicle has been tested using the proper Tractor

2 Weight pursuant to 29 C.F.R. §§ 1928.51, *et seq.*, Honda advertised and told the

3 public that each and every Class Vehicle passed the OSHA 29 C.F.R. § 1928.53

4 test. None did.

5    41.    In failing to provide consumers accurate and truthful information

6 about the true nature and characteristics of the Class Vehicles pertaining to

7 compliance with all applicable federal and state statutes, standards, and

8 regulations, including self-adopted regulations, specifically OSHA requirements

9 of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the

10 bargain, that they have to retrofit the Class Vehicles for adequate safety, and are

11 faced with a strong likelihood of serious injury or death.

12    42.    Honda is believed to have digital computer models of the ROPS that

13 can be inputted into commercially available computer aided engineering

14 programs. They test the ROPS via an outside entity and using the computer aided

15 engineering systems. It would be easy to ascertain whether the ROPS meet the

16 tests by inputting the correct Tractor Weight instead of the lower gross vehicle

17 weight.

18    **E.**    *Plaintiff's Transaction*

19    43.    On or around December 14, 2020, Plaintiff purchased a 2021 Honda

20 Pioneer P1000 in Chico, California.

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

44.    Plaintiff saw and read the stickers on the 2021 Honda Pioneer P1000 as depicted below:



45.    Based on Plaintiff's employment experience in investigations, he understood that OSHA requirements were federal regulations pertaining to safety. Plaintiff read the sticker on the 2021 Honda Pioneer and understood the language to mean that the vehicle's ROPS structure met federal standards for safety and that the vehicle was safe for use by him, his family, and friends. Plaintiff, in seeing and reading the sticker, relied on the language contained therein to purchase the 2021 Honda Pioneer. If the sticker said that the ROPS structure failed to meet OSHA requirements, he would not have purchased the 2021 Honda Pioneer.

46.    Had the sticker not been on the 2021 Honda Pioneer that stated that the ROPS structure met OSHA requirements, Plaintiff would not have purchased the 2021 Honda Pioneer.

47.    The stickers placed on Plaintiff's Honda vehicle as well as Class Vehicles and are visible at the point of sale where consumers are also informed that Class Vehicles meet all applicable standards and regulations, including self-adopted regulations, and meet OSHA requirements of 29 C.F.R. § 1928.53, when in fact, they do not.

48.    None of the Class Vehicles sold by Honda meet the OSHA requirements of 29 C.F.R. § 1928.53. Honda tell all of their customers that their ROPS are safe because they meet this standard. They do not. **They do not test the**

1  **with the proper engine power in determining the vehicle weight**.

2      49.    But for Defendants' misrepresentations, misleading and fraudulent

3  statements, Plaintiff would not have purchased the vehicle or would have paid

4  substantially less for the vehicle than the purchase price of upwards of

5  $20,000.00. Plaintiff did not receive the benefit of the bargain.

6      50.    In failing to provide consumers accurate and truthful information

7  about the true nature and characteristics of the Class Vehicles pertaining to

8  compliance with all applicable federal and state statutes, standards, and

9  regulations, including self-adopted regulations, specifically OSHA requirements

10  of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the

11  bargain, that they have to retrofit the Class Vehicles for adequate safety, and are

12  faced with a strong likelihood of serious injury or death.

13  **VI.**    **CLASS ALLEGATIONS**

14      51.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules

15  of Civil Procedure and/or other applicable law, on behalf of himself and all others

16  similarly situated, as members of the proposed class (hereafter "the Class")

17  defined as follows:

18      All persons in California that purchased a Class Vehicle in

19      the four years preceding the filing of this Complaint.

20      52.    Excluded from the Class are governmental entities, Defendants, any

21  entity in which Defendants have a controlling interest, and Defendants' officers,

22  directors, affiliates, legal representatives, employees, co-conspirators, successors,

23  subsidiaries, and assigns. Also excluded from the Class are any judges, justices or

24  judicial officers presiding over this matter and the members of their immediate

25  families and judicial staff.

26      53.    Plaintiff does not know the exact number of persons in the Class, but

27  believes them to be in the several hundreds, if not thousands, making joinder of all

28  these actions impracticable.

1    54.    The identity of the individual members is ascertainable through

2    Defendants' and/or Defendants' agents' records or by public notice.

3    55.    There is a well-defined community of interest in the questions of law

4    and fact involved affecting the members of the Class.

5    56.    Plaintiff will fairly and adequately protect the interest of the Class.

6    57.    Plaintiff retained counsel experienced in consumer class action

7    litigation.

8    58.    Plaintiff's claims are typical of the claims of the Class, which all

9    arise from the same operative facts involving Defendants' practices.

10    59.    A class action is a superior method for the fair and efficient

11    adjudication of this controversy.

12    60.    Class-wide damages are essential to induce Defendants to comply

13    with the federal and state laws alleged in the Complaint.

14    61.    Class Members are unlikely to prosecute such claims in an individual

15    basis since the individual damages are small. Management of these claims is

16    likely to present significantly fewer difficulties than those presented in many class

17    claims, e.g., securities fraud.

18    62.    Plaintiff and the Class seek injunctive relief against Defendants to

19    preclude Defendants from advertising that the Class Vehicles comply with OSHA

20    29 C.F.R. § 1928.53 until they meet the tests using the correct Tractor Weight as

21    defined in 29 C.F.R. § 1928.51(a)(4).

22    63.    On April 6, 2017 in *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017),

23    the California Supreme Court ruled that any contract that waives the statutory

24    remedy of public injunctive relief under the Unfair Competition Law, False

25    Advertising Law, and Consumers Legal Remedies Act is contrary to California

26    public policy and this unenforceable under California law. Plaintiff and the Class

27    seek injunctive relief under the Unfair Competition Law, Cal. *Bus. & Prof. Code*

28    §§ 17200, *et seq.* due to Defendants' violation of the False Advertising Law,

1  Consumer Legal Remedies Act, Breach of Express Warranty, and Breach of

2  Implied Warranty based on Defendants' unlawful, unfair, and fraudulent business

3  practices and misleading advertisements that the Class Vehicles meet all

4  applicable federal and state statutes, standards, regulations, including OSHA

5  requirements of 29 C.F.R § 1928.53. Plaintiff and the Class seek to enjoin

6  Defendants' illegal business practices of advertising and informing consumers that

7  the Class Vehicles meet all applicable federal and state statutes, standards,

8  regulations, including OSHA requirements of 29 C.F.R § 1928.53, when they in

9  fact, do not.

10      64.    As such, Plaintiff and the Class seek public injunctive relief to

11 prevent Defendants from continuing with their unlawful business acts and

12 practices as alleged herein to ensure that Defendants do not continue to harm the

13 general public by continuing to engage in the unlawful business acts and practices

14 as alleged herein.

15      65.    Plaintiff, individually, and on behalf of all California consumers,

16 seeks individual, representative, and public injunctive relief and any necessary

17 order or judgments that will prevent Defendants from continuing with their

18 unlawful business acts and practices as alleged herein.

19      66.    Defendants acted on grounds generally applicable to the Class

20 thereby making appropriate final declaratory relief with respect to the Class as a

21 whole.

22      67.    Members of the Class are likely to be unaware of their rights.

23      68.    Plaintiff contemplates providing notice to the putative Class

24 Members by direct mail in the form of a postcard and via publication.

25      69.    Plaintiff requests certification of a hybrid class combining the

26 elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P.

27 23(b)(2) for equitable relief.

28 ///

70.     This action is properly maintainable as a class action. This action satisfies the numerosity, typicality, adequacy, predominance and superiority requirements for a class action.

71.     **Numerosity**:  The proposed Class is so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff does not know the number of members in the Class, but believe the Class Members number in the thousands, if not more. Plaintiff alleges that the Class may be ascertained by the records maintained by Defendants.

72.     Plaintiff and Class Members were harmed by the acts of Defendants in at least the following ways:  violation of California's Consumer Legal Remedies Act, Cal. *Civ. Code* §§ 1770(a)(5), (a)(7), (a)(9), (a)(13), (a)(14) and (a)(19); violations of California's Unfair Competition Law and False Advertising Law; fraudulent concealment; violations of the Song-Beverly Act for breach of the express warranties as well as implied warranties; and breach of the implied warranty of merchantability.

73.     **Commonality**: There are questions of law and fact common to Plaintiff and the Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

    i.    Whether Defendants failed to test the Class Vehicles using the correct Tractor Weight as defined by 29 C.F.R. § 1928.51(a)(4);

    ii.    Whether Defendants violated Cal. Civ. Code §§ 1770, *et seq.*;

    iii.    Whether Defendants' practices are "unfair" as defined by Cal. *Bus. & Prof. Code* §§ 17200, *et seq.*;

    iv.    Whether Defendants' practices are "illegal" as defined by Cal. *Bus. & Prof. Code* §§ 17200, *et seq.*;

///

v.     Whether Defendants' practices are "fraudulent" as defined by Cal. *Bus. & Prof. Code* §§ 17200, *et seq.*;

vi.    Whether such practices violate Cal. *Bus. & Prof. Code* §§ 17200, *et seq.*;

vii.   Whether Defendants violated Cal. *Bus. & Prof. Code* §§ 17500, *et seq.*;

viii.  Whether Plaintiff and Class Members are entitled to restitution under Cal. *Bus. & Prof. Code* § 17200-17203;

ix.    Whether Plaintiff and Class Members are entitled to declaratory/injunctive relief under Cal. *Bus. & Prof. Code* § 17535;

x.     Whether Plaintiff and Class Members are entitled to attorneys' fees and costs under Cal. *Code Civ. Proc.* § 1021.5; and

xi.    Whether Plaintiff and Class Members are entitled to statutory damages.

74.    **Typicality**:  Plaintiff's claims are typical of the claims of Class Members, as Plaintiff was subject to the same common course of conduct by Defendants as all Class Members. The injuries to each member of the Class were caused directly by Defendants' wrongful conduct as alleged herein.

75.    **Adequacy of Representation**:  Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff retained counsel with substantial experience in handling complex class action litigation and litigation against product manufacturers. Plaintiff and their counsel are committed to prosecuting this action vigorously on behalf of the Class, and have financial resources to do so.

76.    **Superiority of Class Action**: A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Class Members have little interest in individually controlling the prosecution of separate actions because the individual damage claims of each

Class Member are not substantial enough to warrant individual filings. In sum, for many if not most Class Members, a class action is the only feasible mechanism that will allow them an opportunity for legal redress and justice. The conduct of this action as a class action in this forum, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class Member.

77. Moreover, individualized litigation would also present the potential for varying, inconsistent, or incompatible standards of conduct for Defendants, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. The adjudication of individual Class Members' claims would also, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class Members to protect their interests.

78. Plaintiff and Class Members have suffered and will continue to suffer harm as a result of Defendants' unlawful and wrongful conduct. Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

## VII.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. *CIV. CODE* §§ 1750, *ET SEQ.*

**(Against All Defendants on Behalf of Plaintiff and the Class)**

79. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

80.     The California Consumer Legal Remedies Act (the "CLRA"), Cal. *Civ. Code* §§ 1770, *et seq.*, was enacted to protect consumers against unfair and deceptive business practices. It creates a non-exclusive statutory remedy for unfair methods of competition and unfair or deceptive acts or business practices. Its self-declared purpose is to protect consumers against these unfair and deceptive business practices, and to provide efficient and economical procedures to secure such protection. Cal. *Civ. Code* § 1760. The CLRA was designed to be liberally construed and applied in favor of consumers to promote its underlying purposes. *Id*. The CLRA applies to Defendants' acts and practices described herein because it extends to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to Plaintiff and others similarly situated.

81.     The Class Vehicles are a "good" within the meaning of Cal. *Civ. Code* § 1761(a), and the transactions/agreements are "transactions" within the meaning of Cal. *Civ. Code* § 1761(e).

82.     Plaintiff and Class Members are "consumers" within the meaning of Cal. *Civ. Code* § 1761(d). Plaintiff and Class Members and Defendants are "persons" within the meaning of Cal. *Civ. Code* § 1761(c).

83.     The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices," including but not limited to:

(a)     Cal. *Civ. Code* § 1770(a)(5) "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have";

(b)     Cal. *Civ. Code* § 1770(a)(7) "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another";

(c)     Cal. *Civ. Code* § 1770(a)(9) "Advertising goods or service with intent not to sell them as advertised";

(d)     Cal. *Civ. Code* § 1770(a)(13) "Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions";

(e)     Cal. *Civ. Code* § 1770(a)(14) "Represent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law";

(f)     Cal. *Civ. Code* § 1770(a)(16) "Represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not"; and

(g)     Cal. *Civ. Code* § 1770(a)(19) "Inserting an unconscionable provision in the contract.

84.     Any waiver by Plaintiff and Class Members of the provisions of the CLRA is contrary to public policy and is unenforceable and void under Cal. *Civ. Code* § 1751.

85.     Honda includes informative labels required to be presented to customers by ROHVA like the following to suggest that their vehicles meet these OSHA requirements:



86.     The stickers are placed on Class Vehicles and are visible at the point of sale where consumers are also informed that Class Vehicles meet all applicable standards and regulations, including self-adopted regulations, and meet OSHA requirements of 29 C.F.R. § 1928.53, when in fact, they do not.

87.     On or around December 14, 2020, Plaintiff purchased a 2021 Honda Pioneer P1000 in Chico, California.

88.     Plaintiff saw and read the stickers on the 2021 Honda Pioneer P1000 as depicted below:



89.     Based on Plaintiff's employment experience in investigations, he understood that OSHA requirements were federal regulations pertaining to safety. Plaintiff read the sticker on the 2021 Honda Pioneer and understood the language to mean that the vehicle's ROPS structure met federal standards for safety and that the vehicle was safe for use by him, his family, and friends. Plaintiff, in seeing and reading the sticker, relied on the language contained therein to purchase the 2021 Honda Pioneer. If the sticker said that the ROPS structure failed to meet OSHA requirements, he would not have purchased the 2021 Honda Pioneer.

90.     Had the sticker not been on the 2021 Honda Pioneer that stated that the ROPS structure met OSHA requirements, Plaintiff would not have purchased the 2021 Honda Pioneer.

91.     None of the Class Vehicles sold by Honda meet the OSHA requirements of 29 C.F.R. § 1928.53. Honda tell all of their customers that their ROPS are safe because they meet this standard. They do not.

92.     In failing to provide consumers accurate and truthful information about the true nature and characteristics of the Class Vehicles pertaining to compliance with all applicable federal and state statutes, standards, and regulations, including self-adopted regulations, specifically OSHA requirements of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the

1  bargain, that they have to retrofit the Class Vehicles for adequate safety, and are

2  faced with a strong likelihood of serious injury or death.

3      93.     Pursuant to Cal. *Civ. Code* § 1782, Plaintiff intends to notify

4  Defendants of the particular violations of Cal. *Civ. Code* § 1770 (the "Notice

5  Letter"). If Defendants fail to comply with Plaintiff's demands within thirty days

6  of receipt of the Notice Letter, pursuant to Cal. *Civ. Code* § 1782, Plaintiff will

7  amend this Complaint to request damages and other monetary relief under the

8  CLRA.

9                    **SECOND CAUSE OF ACTION**

10        **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,**

11             **CAL. *BUS. & PROF. CODE* §§ 17200, *ET SEQ.*)**

12       **(Against All Defendants on Behalf of Plaintiff and the Class)**

13      94.     Plaintiff hereby incorporates by reference and re-alleges each and

14  every allegation set forth in each and every preceding paragraph of this

15  Complaint, as though fully set forth herein.

16      95.     The California Unfair Competition Law, Cal. *Bus. & Prof. Code* §§

17  17200, *et seq*., ("UCL") prohibits any unlawful, unfair or fraudulent business act

18  or practice.

19      96.     Plaintiff saw and read the sticker on the 2021 Honda Pioneer as

20  depicted previously:

21

22

23     

24

25

26

27

28  ///

97.     Based on Plaintiff's experience, he understood that OSHA requirements were federal regulations pertaining to safety. Plaintiff read the sticker on the 2021 Honda Pioneer and understood the language to mean that the vehicle's ROPS structure met federal standards for safety and that the vehicle was safe for use by him, his family, and friends. Plaintiff, in seeing and reading the sticker, relied on the language contained therein to purchase the 2021 Honda Pioneer. If the sticker said that the ROPS structure failed to meet OSHA requirements, he would not have purchased the 2021 Honda Pioneer.

98.     Had the sticker not been on the 2021 Honda Pioneer that stated that the ROPS structure met OSHA requirements, Plaintiff would not have purchased the 2021 Honda Pioneer.

*UNLAWFUL*

99.     Defendants committed unlawful business acts and practices by engaging in conduct that violates the CLRA, Cal. *Civ. Code* §§ 1770(a)(5), (a)(7), (a)(9), (a)(13), (a)(14) and (a)(19) as well as California's False Advertising Law.

100.   Such conduct is ongoing and continues to this date and violates the unlawful prong of the UCL.

*FRAUDULENT*

101.   In order to prevail under the fraudulent prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

102.   The test for fraud as contemplated by Cal. *Bus. & Prof. Code* §§ 17200, *et seq*. is whether the public is likely to be deceived. Unlike common law fraud, a UCL violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

103.   Honda includes informative labels required to be presented to customers by ROHVA to suggest that their vehicles meet these OSHA requirements.

104.   The stickers are placed on Class Vehicles and are visible at the point of sale where consumers are also informed that Class Vehicles meet all applicable standards and regulations, including self-adopted regulations, and meet OSHA requirements of 29 C.F.R. § 1928.53, when in fact, they do not.

105.   None of the Class Vehicles sold by Honda meet the OSHA requirements of 29 C.F.R. § 1928.53. Honda tell all of their customers that their ROPS are safe because they meet this standard. They do not.

106.   Defendants fraudulently informed Plaintiff and the Class that the Class Vehicles passed the OSHA 29 C.F.R. § 1928.53 test when Honda used the inappropriate gross vehicle weight instead of 110 pounds multiplied by either the maximum power take off horsepower of 95% of the net flywheel horsepower, which would be between four and nearly seven times a greater force for the test. This induced Plaintiff and other class members to purchase the Class Vehicles at inflated prices based on those misrepresentations.

107.   In failing to provide consumers accurate and truthful information about the true nature and characteristics of the Class Vehicles pertaining to compliance with all applicable federal and state statutes, standards, and regulations, including self-adopted regulations, specifically OSHA requirements of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the bargain, that they have to retrofit the Class Vehicles for adequate safety, and are faced with a strong likelihood of serious injury or death.

108.   Thus, Defendants' conduct has violated the fraudulent prong of Cal. *Bus. & Prof. Code* § 17200.

109.   Such conduct is ongoing and continues to this date and violates the fraudulent prong of the UCL.

110.   On April 6, 2017 in *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017), the California Supreme Court ruled that any contract that waives the statutory remedy of public injunctive relief under the Unfair Competition Law, False

Advertising Law, and Consumers Legal Remedies Act is contrary to California public policy and this unenforceable under California law. Plaintiff and the Class seek injunctive relief under the Unfair Competition Law, Cal. *Bus. & Prof. Code* §§ 17200, *et seq.* due to Defendants' violation of the False Advertising Law, Consumer Legal Remedies Act, Breach of Express Warranty, and Breach of Implied Warranty based on Defendants' unlawful, unfair, and fraudulent business practices and misleading advertisements that the Class Vehicles meet all applicable federal and state statutes, standards, regulations, including OSHA requirements of 29 C.F.R § 1928.53. Plaintiff and the Class seek to enjoin Defendants' illegal business practices of advertising and informing consumers that the Class Vehicles meet all applicable federal and state statutes, standards, regulations, including OSHA requirements of 29 C.F.R § 1928.53, when they in fact, do not.

111.   As such, Plaintiff and the Class seek public injunctive relief to prevent Defendants from continuing with their unlawful business acts and practices as alleged herein to ensure that Defendants do not continue to harm the general public by continuing to engage in the unlawful business acts and practices as alleged herein.

112.   Plaintiff, individually, and on behalf of all California consumers, seek individual, representative, and public injunctive relief and any necessary order or judgments that will prevent Defendants from continuing with their unlawful business acts and practices as alleged herein.

113.   Plaintiff seeks declaratory relief, restitution and disgorgement of all profits obtained, and public injunctive relief as previously described.

///

///

///

///

1

## THIRD CAUSE OF ACTION

2

### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW,

3

### CAL. *BUS. & PROF. CODE* §§ 17500, *ET SEQ.*

4

**(Against All Defendants on Behalf of Plaintiff and the Class)**

5   114.   Plaintiff hereby incorporates by reference and re-alleges each and

6   every allegation set forth in each and every preceding paragraph of this

7   Complaint, as though fully set forth herein.

8   115.   Pursuant to the California False Advertising Law, Cal. *Bus. & Prof.*

9   *Code* §§ 17500, *et seq.*, ("FAL") it is unlawful to engage in advertising "which is

10   untrue or misleading, and which is known, or which by the exercise of reasonable

11   care should be known, to be untrue or misleading."

12   116.   Defendants caused to be made or disseminated through California

13   and the United States, through advertising, marketing and other publications,

14   statements that were untrue or misleading, including statements on the stickers on

15   Class Vehicles and in nationally distributed print and video advertisements that

16   the Class Vehicles were passed the OSHA 29 C.F.R. § 1928.53 test. These

17   statements were known, or which by the exercise of reasonable care should have

18   been known, to Defendants to be untrue and misleading to consumers, including

19   Plaintiff and the other Class Members.

20   117.   On or around December 14, 2020, Plaintiff purchased a 2021 Honda

21   Pioneer P1000 in Chico, California.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1    118.   Plaintiff saw and read the stickers on the 2021 Honda Pioneer P1000

2  as depicted below:



10    119.   Based on Plaintiff's employment experience in investigations, he

11  understood that OSHA requirements were federal regulations pertaining to safety.

12  Plaintiff read the sticker on the 2021 Honda Pioneer and understood the language

13  to mean that the vehicle's ROPS structure met federal standards for safety and that

14  the vehicle was safe for use by him, his family, and friends. Plaintiff, in seeing

15  and reading the sticker, relied on the language contained therein to purchase the

16  2021 Honda Pioneer. If the sticker said that the ROPS structure failed to meet

17  OSHA requirements, he would not have purchased the 2021 Honda Pioneer.

18    120.   Had the sticker not been on the 2021 Honda Pioneer that stated that

19  the ROPS structure met OSHA requirements, Plaintiff would not have purchased

20  the 2021 Honda Pioneer .

21    121.   The labels are placed on Class Vehicles and are visible at the point of

22  sale where consumers are also informed that Class Vehicles meet all applicable

23  standards and regulations, including self-adopted regulations, and meet OSHA

24  requirements of 29 C.F.R. § 1928.53, when in fact, they do not.

25    122.   None of the Class Vehicles sold by Honda meet the OSHA

26  requirements of 29 C.F.R. § 1928.53. Honda tell all of their customers that their

27  ROPS systems are safe because they meet this standard. They do not.

28  ///

123.   In failing to provide consumers accurate and truthful information about the true nature and characteristics of the Class Vehicles pertaining to compliance with all applicable federal and state statutes, standards, and regulations, including self-adopted regulations, specifically OSHA requirements of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the bargain, that they have to retrofit the Class Vehicles for adequate safety, and are faced with a strong likelihood of serious injury or death.

124.   As a direct and proximate result of Defendants' misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property. Plaintiff reasonably relied upon Defendants' representations regarding the Class Vehicles. In reasonable reliance on Defendants' false advertisements, Plaintiff and other Class Members purchased, owned or leased Class Vehicles. In turn, Plaintiff and other Class Members were have suffered injury in fact.

125.   The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class Members in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendants' conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendants to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members, Defendants' revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, pray for relief and judgment as follows:

1.   Certifying the Class as requested herein;

2.   Providing such further relief as may be just and proper.

1    3.    Appointing Plaintiff and his counsel to represent the Class;

2    In addition, Plaintiff, and the Class Members pray for further judgment as

3    follows:

4    4.    Restitution of the funds improperly obtained by Defendants;

5    5.    Any and all statutory enhanced damages;

6    6.    All reasonable and necessary attorneys' fees and costs provided by

7         statute, common law or the Court's inherent power;

8    7.    For equitable and injunctive relief, including public injunctive relief;

9         and

10   8.    Any and all other relief that this Court deems just and proper.

11

12   Dated:  May 5, 2021              Respectfully submitted,

13                          By:  */s/ Christopher W. Wood*

14

15                          Christopher W. Wood (SBN 193955)
                            **DREYER BABICH BUCCOLA WOOD**
16                          **CAMPORA, LLP**

17                          John P. Kristensen (SBN 224132)
                            Jesenia A. Martinez (SBN 316969)
18                          **KRISTENSEN LLP**

19                          Todd M. Friedman (SBN 216752)
20                          Adrian R. Bacon (SBN 280332)
                            Thomas E. Wheeler (SBN 308789)
21                          **LAW OFFICES OF TODD M. FRIEDMAN,**
22                          **P.C.**

23                          ***Attorneys for Plaintiff and all other***
                            ***similarly situated***
24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands a trial by jury for all such triable claims.

3

4

Dated:  May 5, 2021                        Respectfully submitted,

5

By:  */s/ Christopher W. Wood*

6
7
8

Christopher W. Wood (SBN 193955)
**DREYER BABICH BUCCOLA WOOD
CAMPORA, LLP**

9

John P. Kristensen (SBN 224132)
Jesenia A. Martinez (SBN 316969)
**KRISTENSEN LLP**

10

11
12
13

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Thomas E. Wheeler (SBN 308789)
**LAW OFFICES OF TODD M. FRIEDMAN,
P.C**.

14

15

***Attorneys for Plaintiff and all other
similarly situated***

16

17

18

19

20

21

22

23

24

25

26

27

28

---

DocuSign Envelope ID: 350EDF09-E5CC-4610-9C69-727D102B0F60

## DECLARATION OF SHAWN SPENCER

I, Shawn Spencer, declare that if called as a witness, I could and would competently testify to the following facts:

1.    I submit this declaration pursuant to Section 1780(d) of the California Consumer Legal Remedies Act. I have personal knowledge of the matters set forth below and as a witness, I could and would be competent to testify thereto.

2.    It is my understanding that defendants HONDA MOTOR COMPANY, AMERICAN HONDA MOTOR CO., INC., and HONDA OF SOUTH CAROLINA MANUFACTURING, INC. (collectively, "Defendants" or "Honda") conduct regular and sustained business in Butte County, California where I purchased my 2021 Honda Pioneer.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on ___5/5/2021_____ in California.

DocuSigned by:

*Shawn Spencer*

F25C67D0689C482...

Shawn Spencer